IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Cr. No. 98-00591 SOM |
| | ) Civ. No. 04-00488 SOM/LEK |
| Plaintiff, | ) |
| | ) ORDER DENYING PETITION TO |
| vs. | ) VACATE AND SET ASIDE A |
| | ) JUDGMENT OF CONVICTION UNDER |
| STEVEN BERNARD BROOKS, | ) 28 U.S.C. § 2255; ORDER |
| | ) DENYING MOTION FOR LEAVE TO |
| Defendant. | ) CONDUCT DISCOVERY AND FOR |
| | ) APPOINTMENT OF COUNSEL |

ORDER DENYING PETITION TO VACATE AND SET ASIDE A JUDGMENT OF CONVICTION UNDER 28 U.S.C. § 2255; ORDER DENYING MOTION FOR LEAVE TO CONDUCT DISCOVERY AND FOR APPOINTMENT OF COUNSEL

I.    INTRODUCTION.

On April 18, 2000, a jury convicted Defendant Steven Bernard Brooks of knowingly and intentionally distributing crystal methamphetamine and of conspiring to distribute controlled substances in violation of §§ 841(a)(1), 841(b)(1)(A), and 846 of Title 21 of the United States Code.  Brooks was sentenced by this court to incarceration for a period of 262 months, 6 years of supervised release, and special assessments of $200.00; Brooks also forfeited his interest in a Huntington Beach, California, property.  An Amended Judgment was entered against Brooks on April 10, 2001.

Brooks appealed his conviction and sentence to the Ninth Circuit, which affirmed this court in a memorandum disposition on numerous grounds and addressed Apprendi v. New Jersey, 530 U.S. 466 (2000).  See United States v. Brooks, No. 01-10282 (May 15, 2003).

On August 9, 2004, Brooks filed the present § 2255 petition, raising three grounds of error. First, Brooks says his sentence violates <u>Blakely v. Washington</u>, 124 S. Ct. 2521 (2004). Second, Brooks argues that his attorney, Milton Grimes, was ineffective because Grimes had a conflict of interest based on alleged drug deals between him and Brooks. Brooks says that he told Government agents that Grimes was involved in drug trafficking, that Government agents then told Brooks's Hawaii counsel, Samuel P. King, Jr., about Grimes's drug involvement, and that King discussed with Grimes the Government's knowledge of Grimes's drug involvement. Third, Brooks says that Grimes was ineffective because of a conflict of interest arising out of Grimes's status as a co-owner and officer in Brooks's company, Landmark Telecommunications, Inc., which the Government was investigating for having allegedly laundered Brooks's drug money.

Brooks's § 2255 petition is denied. First, because <u>Blakely</u> is not retroactive, it cannot form the basis of the present § 2255 petition.

Second, Brooks withdrew his theory pertaining to Grimes's alleged involvement with selling drugs after the Government submitted the Declaration of Samuel P. King, Jr. (Oct. 27, 2004), the Declaration of Keith Shigetomi (Oct. 29, 2004), the Declaration of Jason Pa (undated, but attached to the Opposition filed on November 3, 2004), the Declaration of Gerald

2

Lawson (Oct. 29, 2004), and the Declaration of Milton Grimes (Oct. 28, 2004), all denying Brooks's allegations about having discussed Grimes's alleged involvement with drugs. See Second Declaration of Steven Bernard Brooks (Nov. 30, 2004) ¶ 2 ("I knowingly and voluntarily withdraw the claim that I raise in ground two(2) of my § 2255 Motion, i.e., the conflict claim concerning accusations that S/A Lawson informed Sam King Jr. that Grimes attempted to sell me drugs in the past - information which King allegedly passed on to Grimes."); Steven Bernard Brooks' Response to the Government's Opposition (Nov. 30, 2004) at 3 n.1 ("Movant hereby withdraws his claim raised in Ground 2 of his § 2255 Motion (the claim as to S/A Lawson informing Sam King Jr. that Movant accused Grimes of attempting to sale [sic] Movant drugs).").

Third, Brooks waived any conflicts of interest arising out of Grimes's involvement with Landmark.

II.     ANALYSIS.

   A.   Blakely is Not Applicable.

Brooks's initial argument is that his sentence violates the United States Supreme Court's June 2004 decision in Blakely v. Washington, 124 S. Ct. 2531 (2004). Blakely, however, was decided after Brooks's judgment of conviction and sentence became final, and does not apply retroactively to initial or successive petitions under § 2255. See Cook v. United States, 386 F.3d 949,

3

949 (9th Cir. 2004) ("the Supreme Court has not made <u>Blakely</u> retroactive to cases on collateral review. Petitioner's application for authorization to file a second or successive 28 U.S.C. § 2255 motion in the district court is therefore denied"); <u>United States v. Stancell</u>, 2004 WL 2738828, *2 (D.D.C. Dec. 2, 2004) (holding that <u>Blakely</u> was not retroactively applicable to a motion construed as an initial petition for collateral relief under § 2255); <u>Carbajal v. United States</u>, 2004 WL 2283658, *8 (S.D.N.Y. Oct. 8, 2004) (reasoning that <u>Blakely</u> does not apply retroactively to initial petitions under § 2255); <u>United States v. Lowe</u>, 2004 WL 1803354, *3 (N.D. Ill. Aug. 5, 2004) (concluding that <u>Blakely</u> does not apply retroactively to initial petitions under § 2255).[1]

    B.    Brooks Waived Any Conflict Arising Out Of Grimes's Involvement With Landmark.

The third argument in Brooks's § 2255 petition is that his attorney, Grimes, was ineffective because of a conflict of interest arising out of Grimes's status as a co-owner and officer in Brooks's company, Landmark, which the Government was

---

[1] To the extent that Brooks argues that his sentence violates <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Ninth Circuit has already rejected that argument. <u>See</u> <u>United States v. Brooks</u>, No. 01-10282 (May 15, 2003).

4

investigating for having allegedly laundered Brooks's drug money.[2]

Before trial, the Government moved to have Grimes dismissed as counsel in this case because of a conflict that could have arisen based on Grimes's involvement with Landmark. That motion was heard by Magistrate Judge Francis I. Yamashita on January 29, 1999.

The Government argued at the hearing that it was actively investigating Landmark for money laundering relating to drug proceeds and that Grimes was, at some point in time, Landmark's vice president and general counsel, and owner of 25.4% of its stock. The Government argued that Grimes was, at least potentially, involved with Landmark during the period in which Landmark might have been involved with money laundering. See Transcript of Proceedings (Jan. 29, 1999) at 3, 8. Grimes argued at the hearing that there was no conflict because his involvement with Landmark was for a period of time irrelevant to the charges against Brooks. See id. at 4. King, Brooks's Hawaii counsel, then indicated to the court that, like Grimes, Brooks did not think there was a conflict. See id. at 5-6.

---

[2]In discussing the potential conflicts raised by Brooks in connection with alleged conduct by Grimes, the court is not finding that Grimes actually committed the conduct Brooks now alleges.

5

Magistrate Judge Yamashita then discussed the potential conflicts raised by the Government with Brooks:

> there's still a possibility that Mr. Grimes' representation of you could create problems down the line in this sense. Mr. Grimes was an officer and a shareholder of the corporation at a time which may or may not have been involved.
>
> . . . .
>
> One would be the possibility that the government would at some point decide to proceed against Mr. Grimes, since he was a shareholder and a officer of the corporation, as being involved in money laundering. I do not know. We're just at this point speculating, because we have to look ahead.
>
> Should that occur or should that be a potential, there's always the possibility that Mr. Grimes might, in order to save his own skin really, perhaps not represent you as well, in order to get favorable treatment from the government or to deflect the government's focus from him.
>
> . . . .
>
> Secondly, it might be a situation where because Mr. Grimes was a shareholder and a officer of the corporation, the government might at some point call him to testify against you, in terms of the corporation, the operation of the corporation, as it might relate to these money laundering charges.
>
> Third, it might be that you would want to call Mr. Grimes because he was involved as a shareholder and a officer of the corporation, to testify on your behalf. But you would be precluded from doing that, because he is your attorney.
>
> Do you understand what I have explained to you, in terms of potentials here? I'm not

>       saying any of this occurs, but we have to
>       look ahead and deal with these possibilities.
>
>       Because if they come up, we're going to
>       be saying, well Mr. Brooks, too bad.  We -
>       you knew this was coming, and so we have to
>       make sure you knew.
>
>       Do you understand the potentials that
>       are here, the conflict?
>
>       MR. BROOKS: Yes, I understand them
>       perfectly well.
>
>       THE COURT: And is it still your belief
>       that you would prefer to have Mr. Grimes
>       present and you are waiving any conflict
>       which may arise because of these issues?
>
>       MR. BROOKS: Yes, I am.

Transcript of Proceedings (Jan. 29, 2004) at 9-11.

To the extent Brooks argues that Grimes was involved with Landmark at the time Brooks was laundering his drug money through that company, Brooks has clearly waived any conflict. Magistrate Judge Yamashita discussed with Brooks the potential conflicts that could have arisen in the future at the hearing on the Government's motion to disqualify Grimes as Brooks's attorney.[3]  In fact, the exact conflict Brooks is now claiming

---

[3] Although Brooks argues to the contrary here, at the time of the hearing in 1999, there was only a potential, as opposed to an actual, conflict.  The record did not establish that Grimes was an officer or co-owner of Landmark during the period that the Government was investigating Landmark for money laundering.  Nor was there any evidence that Grimes was actually involved with money laundering.  At most, there was only the theoretical possibility that Grimes's conduct could have actually been affected by his relationship with Landmark.

was discussed with Magistrate Judge Yamashita. Before Brooks waived the conflict, Magistrate Judge Yamashita discussed with Brooks the meaning of that waiver, including the possibility that Grimes might not represent Brooks vigorously because Grimes would try to protect himself or to curry favor with the Government. Magistrate Judge Yamashita also informed Brooks of the possibility that Grimes might possess evidence relevant to the criminal charges pending against Brooks.

A defendant may waive his or her "right to the assistance of an attorney unhindered by a conflict of interests." Holloway v. Arkansas, 435 U.S. 475, 483 n.5 (1978); Lewis v. Mayle, 2004 WL 2699900, *5 (9th Cir. Nov. 29, 2004). To be valid, such a waiver must knowing and intelligent. Lockhart v. Terhune, 250 F.3d 1223, 1232 (9th Cir. 2001). A waiver cannot be knowing and intelligent unless the defendant is sufficiently informed of the consequences of his choice. Belmontes v. Woodford, 350 F.3d 861, 885 (9th Cir. 2003); Lockhart, 250 F.3d at 1232. In finding valid waivers, the Ninth Circuit does not require that defendants predict the particular dilemmas that will present themselves, but the Ninth Circuit does require defendants to know about all the risks that are likely to develop. Lockhart, 250 F.3d at 1232. This court is required to "ascertain with certainty" that Brooks knowingly and intelligently waived his right to conflict-free counsel by focusing on what he

understood. Id. Moreover, this court must indulge every reasonable presumption that Brooks did not waive his right to conflict-free counsel. See United States v. Martinez, 143 F.3d 1266, 1269 (9th Cir. 1998).

The discussion Brooks had with Magistrate Judge Yamashita shows that Brooks clearly understood and knowingly, voluntarily, and intelligently waived his right to conflict-free counsel, assuming Grimes had a conflict as a co-owner and officer in Landmark. Brooks clearly knew that the Government was investigating Landmark in connection with money laundering charges and expressly waived any conflict arising out of that conflict.[4] At the time of the waiver, Brooks had able local counsel, King, representing his interests. See Transcript of Proceeding (January 29, 1999) at 5-6. That local counsel was available to discuss with Brooks the implications of Grimes's alleged conflicts on Grimes's representation of Brooks. Given the statements by King at the disqualification hearing, it

---

[4] Brooks is unpersuasive in claiming that he was not specifically informed by Magistrate Judge Yamashita that the Government might use Grimes's or Landmark's financial records and therefore that his waiver was not knowing and intelligent. Given the Governments investigation of Landmark for money laundering and Grimes's alleged financial involvement with Landmark, the risk that the Government might introduce either Landmark's or Grimes's records at trial was apparent. For waivers to be knowing and intelligent, the Ninth Circuit does not require that a defendant predict any particular dilemma, only that the defendant know about the risks likely to develop. See Lockhart, 250 F.3d at 1232. Brooks knew about the risks likely to develop.

9

appears that Brooks had such a discussion with King. <u>See</u> <u>id.</u> (discussing Brooks's thoughts on the conflict waiver issue and stating that Brooks was ready to waive any such conflict). The discussion that Brooks had with Magistrate Judge Yamashita indicates that his waiver was unquestionably voluntary. Because Brooks was properly advised as to his waiver of any conflict, he "is not free to intelligently and knowingly make or approve of a tactical choice [to waive the conflict] and then later abandon it when it seems convenient." <u>Martinez</u>, 143 F.3d at 1269.

To the extent Brooks now argues that Grimes had a conflict of interest relating to property placed in Landmark's or Brooks's name to avoid repercussions from the Internal Revenue Service, Brooks also waived that potential conflict of interest at the January 29, 1999, hearing.[5] Assuming for purposes of this petition that Brooks is accurately describing circumstances in which Grimes gave Brooks $50,000 in 1997 in connection with that property, Brooks certainly knew of that alleged conduct at the

---

[5]Again, this allegation only raises the potential for a conflict of interest, as opposed to an actual conflict of interest. There is no evidence that the Government was investigating or has ever investigated or pursued Grimes in connection with any criminal violation arising out of the purchase of the property by Grimes, Brooks, and/or Landmark. Brooks's allegation, far from demonstrating that Grimes's representation was actually affected, merely raises the theoretical possibility that Grimes was influenced by the alleged conduct of buying a house and putting it in someone else's name.

time of the 1999 hearing.[6] The discussion that Magistrate Judge Yamashita had with Brooks at that hearing concerned potential conflicts based on possible criminal conduct. The conflict arising out of Grimes's alleged purchase of the property with the $50,000 was foreseeable at the time of the 1999 hearing, especially because Brooks and Grimes were the people allegedly involved in that conduct. Therefore, Brooks waived any conflict arising out of that conduct. See Martinez, 143 F.3d at 1269 (applying waiver to all foreseeable conflicts at the time of the hearing at which the waiver was obtained). Under these circumstances, it cannot be said that Brooks did not know about the risks that were likely to develop from the potential conflict.[7] See Lockhart, 250 F.3d at 1232.

---

[6] Given Brooks's alleged assistance in Grimes's purchase of the property, Brooks either knew or should have known that Grimes would be living at that property. In any event, Grimes's residency at the property did not create any potential conflict that was not already present given the allegations that Brooks and Grimes arranged the purchase to hide it from the Internal Revenue Service.

[7] Brooks's citation to Mannhalt v. Reed, 847 F.2d 576 (9th Cir. 1988), is unavailing. Although Brooks argues that Mannhalt stands for the proposition "that a defendant does not knowingly and intelligently waive a conflict just because he or she is aware of the facts underlying the conflict," see Response at 6, Mannhalt is distinguishable. In Mannhalt, the defendant had no discussion of the potential conflict with either his attorney or the court. Under those circumstances, Mannhalt held that there was no waiver of the conflict. Brooks, by contrast, was informed of the consequences of any potential conflict arising out of Grimes's alleged criminal conduct.

11

Because Brooks's various contentions of Grimes's ineffectiveness are all premised on the alleged conflicts, and because the conflicts were waived, Brooks does not establish a right to relief based on ineffective assistance of counsel. The court notes that its own observation at trial was that Grimes presented a vigorous and skillful defense.

III.   CONCLUSION.

For the foregoing reasons, Brooks's petition is denied. The court also denies Brooks's motion for leave to conduct discovery and for appointment of counsel.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 22, 2004.

/s/ Susan Oki Mollway
SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE

United States v. Brooks; Civ. No. 04-00488 SOM/LEK; Cr. No. 98-00591 SOM; ORDER DENYING PETITION TO VACATE AND SET ASIDE A JUDGMENT OF CONVICTION UNDER 28 U.S.C. § 2255; ORDER DENYING MOTION FOR LEAVE TO CONDUCT DISCOVERY AND FOR APPOINTMENT OF COUNSEL